JjDUFRESNE, Chief Judge.
This is an appeal by Pelican Outdoor Advertising, Inc., plaintiff-appellant, from an adverse judgment in its suit to enforce a contract of lease with Alvin L. Eugene, defendant-appellee. The trial judge ruled that the lease was defective because there had not been a meeting of the minds as to the price. Because we find neither legal nor manifest factual error in this determination, we affirm.
Eugene, a Houston resident, is the owner of a tract of land on Interstate 10 in St. John Parish. In early 1998 John Jackson, III, president of Pelican Outdoor Advertising, Inc., contacted Aaron Cross, a local real estate broker, about possible locations for highway advertising signs. Cross put him in touch with Eugene. Jackson and Eugene entered into negotiations for a sign site, and on July 9, 1998, the agreement at issue here was signed by both parties. During these negotiations the parties also discussed the necessity of obtaining a state permit to have a number of trees cut so the sign would be visible from the highway.
The lease document provided for a twenty-one year term for a sign at the location. The price of the lease was set forth in the following clauses:
| ¡>3. The rental shall be one of the three payment time frames in the additional terms with a one dollar deposit (paid now) and shall begin when billboard is erected and be paid accordingly.
13. Additional Terms: ...
Lessee will start paying the Lessor within 165 days of the start (execution) of this Lease Agreement or the Lessor can void, terminate and/or nullify this Lease Agreement....
Lessee will pay'the Lessor $21,938 within one year, or $24,375 within two years, or $26,812 within three years from the execution (start) of this “Lease Agreement.” When one of the above payment time frames has been fulfilled, this will signify and/or mean that final payments) for the entire twenty-one year term of this “lease Agreement” has been completed/rendered in full.
Within 165 days of the signing of the document, Jackson sent Eugene a check for $1,500. Eugene returned the check with a letter stating that:
1. It is not enough to bind the lease;
2. No terms established;
3. No amount established;
4. Changes the year and not the amount;
5. Void this lease — non payment.
At that point Jackson contacted Eugene and suggested that other terms might be worked out.
When further discussions came to nothing, Jackson brought the present action for Specific Performance of the lease and the matter went to trial. Although Jackson originally prayed for damages and Eugene reconvened also seeking damages, no evidence as to either of these claims was presented and those claims were dismissed without objection. |sThe trial judge found as a matter of fact that there had not been consent as to a price for the lease as required by La. Civ.Code, Art. 2670, and therefore that no valid lease had been *186 confected. Pelican Outdoor Advertising, Inc. now appeals.
There was general agreement at trial that the parties were discussing a rental price in the range of $4,000 per year. There was also agreement that the parties had discussed discounting the rent payments if the entire amount were to be paid within the first three years of the lease. Jackson testified that the figures appearing in the signed lease were the result not only of discounting the rent for early payment, but also because of an offset for the expense of cutting the trees. He also said that Eugene understood and agreed to these figures when he signed the document.
Eugene testified, to the contrary, that the lease amounts were never agreed to by him. He stated that at the time of the signing he was in Louisiana for only a few days on other business. He said that although he did not agree to the amounts specified in the lease, Jackson told him that he needed a signed document to present to the state regulators to get a permit to cut the trees. Because Eugene was in the state for only a few days, Jackson wanted to get his signature before he returned to Houston. Eugene said that the only reason he signed the document was to facilitate Jackson’s applying for the tree permit, but that the amounts stated in the lease were never agreed to by him, and that Jackson knew this. Eugene finally said that the amount of the rent was left open and that Jackson knew that no rent had yet been agreed to. Eugene’s brother Glen, who witnessed the document, also testified. While that testimony was admittedly sketchy, this witness remembered that Jackson needed the |4document to take to Baton Rouge and that Jackson and Eugene were to discuss the terms of the lease later.
In her reasons for judgment the trial judge stated that she found Eugene’s testimony more credible, and concluded that there had been no meeting of the minds as to the rental amount. She thus refused to order specific performance of the lease. Appellant first asserts here that it was legal error for the judge not to enforce the lease because the it is unambiguous on its face. Second, it urges that without a finding that there was some ambiguity in the lease, the court erred in considering extrinsic evidence as to the meaning of the document. Finally, it argues that if there was an ambiguity as to the lease, that ambiguity should have been resolved against Eugene because it was he who had proposed the rental figures for the three year optional payouts.
Because appellant’s first two argument are related, we treat them together. Appellant relies on La. Civ.Code, Arts. 1832 and 1839 for the proposition that extrinsic evidence may not be introduced to assail a written contract. However, Art. 1848 provides that while testimonial or other evidence may not be admitted to negate or vary an act under private signature, such evidence may be received to prove that the act is a simulation.
In the present case Eugene asserted that the lease was indeed a simulation and thus testimonial evidence was admissible under Art. 1848. That testimony by Eugene was that he signed the document only so that Jackson could use it as part of his tree cutting application with the state. He said that it was understood by himself and Jackson that the numbers appearing the lease had not been agreed upon, but would be subject to |fifurther negotiations. Jackson denied these assertions.
In the above circumstances, the trial judge was called upon to make a credibility determination and she did so in Eugene’s favor. It should also be noted that in her *187 reasons for judgment the trial judge referred to the fact that the yearly rental which had been discussed by the parties was $4,000, for a total of $84,000 over the 21 year term of the lease. Under the lease document, that figure was discounted to about one fourth for early payment, an amount which Eugene said he had no intention of accepting. It is evident that this disparity weighed in Eugene’s favor in the trial judge’s ultimate conclusion.
Because resolution of the dispute in the trial court depended on factual findings, the standard of review here is that of manifest error, Rosell v. ESCO, 549 So.2d 840 (La.1989). As already shown, there was conflicting testimony which was resolved by the judge in Eugene’s favor. We find no manifest error in this determination.
Appellant finally asserts that any ambiguities in the .document as to the price appearing in the document should have been construed against Eugene because it was he who provided the payment plan. While it is true that ambiguities are interpreted against the person preparing a document, that rule is not applicable here. The issue is not how to interpret the rent clauses, but rather whether the parties intended the document to be an actual lease or merely a simulation for the purpose of getting the tree cutting permit. We therefore need not address this argument further.
For the foregoing reasons the judgment of the district court is hereby affirmed.

AFFIRMED.